**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DALE WESTMORELAND, | Case No.: 4:25-cv-05571 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| DEER DANCER RANCH. | **JURY TRIAL DEMANDED.** |
| Defendant. | |

Plaintiff DALE WESTMORELAND ("Plaintiff"), by his attorneys, CONSUMER JUSTICE LAW FIRM, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and Texas Labor Code § 21.051 *et seq.*, and seeks damages to redress the injuries he suffered as a result of being discriminated against based on his actual and/or perceived disability and termination of his employment due to his actual and/or perceived disability after requesting reasonable accommodations.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101 and 28 U.S.C. § 1331.

3. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court under 28 U.S.C. § 1391 (a) and (b) because "a substantial part of the events or omissions giving rise to the claim" occurred within the Southern District of

1

Texas, Defendant has a location and employees within this District and Defendant conducts substantial and not isolated business within the Southern District of Texas.

5.  By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around August 20, 2025 against DEER DANCER RANCH; (b) receiving a Notice of Right to Sue from the EEOC on August 28, 2025 ; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

6.  Plaintiff is a resident of the State of Texas, County of Colorado.

7.  At all relevant times, Plaintiff was employed at DEER DANCER RANCH, located at 1204 Jensen Ranch Road, Alleyton, in Colorado County Texas 78935.

8.  Upon information and belief, defendant DEER DANCER RANCH also known as JENSEN RANCH, ("DEER") is a Texas company, engaging in business in City of Alleyton in the Colorado County of Texas.

9.  Upon information and belief, Defendant DEER employs fifteen or more employees.

10. Defendant DEER is an "employer" within the meaning of the ADA and the Texas Labor Code and is located within the jurisdiction of this Court.

## STATEMENT OF FACTS

11. On or around November 15, 2023, Defendant hired Plaintiff as a Ranch Manager.

12. Throughout his employment, Plaintiff's responsibilities included, among other tasks, pasture management and irrigation, managing the feed for Defendant's livestock, selling and marketing Defendant's deer, and overall supervision and management of the animals in addition

to protecting the ranch, while also overseeing landscaping.

13.    Plaintiff also lived on Defendant's property and signed a lease agreement as part of his employment.

14.    On or around 7:30AM on October 4, 2024, Plaintiff was at home when he began experiencing intense vomiting and diarrhea.

15.    Emergency Services were immediately contacted by Plaintiff's wife and  Plaintiff was taken to Columbus Memorial Hospital. Emergency Services found that Plaintiff was completely dehydrated and had lost a significant amount of fluids.

16.    Upon arriving at the hospital, Plaintiff's physicians found that he was bleeding internally.

17.    After initial testing, Plaintiff was transferred via ambulance to Memorial Hermann Katy Hospital and admitted, because Columbus Memorial Hospital did not have the capability to treat him.

18.    On or around October 9, 2024, Plaintiff's physicians performed an Esophagogastroduodenoscopy ("EGD"), which is an endoscopy that examines the upper gastrointestinal tract. Plaintiff underwent an EGD whenever he was seen in a hospital, due to his prior history of heart attacks.

19.    On or around October 10, 2024, Plaintiff underwent an additional surgery addressing a left inguinal hernia and bleeding ulcers.

20.    During this time, Jack Jensen ("Jensen"), the owner of Defendant's ranch, texted the Plaintiff while he was in the hospital asking about Plaintiff's intended return to work date.

21.    At the time, Plaintiff was still so incapacitated that Plaintiff's wife needed to respond to Jensen's message on Plaintiff's behalf:

Thursday, October 10 at 8:36pm (from Jensen): "*What [is] the result of*

*the surgery. How is he doing?"*

Thursday, October 10 at 9:50pm (from *Plaintiff*'s phone): "*Hi Jack. They removed a mass from his lower abdomen. I am meeting with his Dr. team tomorrow and should know more. He's in pain and really groggy.*"

22.    On or around October 11, 2024, Plaintiff was released from the hospital with a doctor's note, which he provided to Jensen by email and again in person during his termination, which stated he was to perform only light duty work with no heavy lifting at work for thirty days.

23.    On the day of Plaintiff's hospital release, Plaintiff was supposed to receive his paycheck, as it was the normal pay day for Defendant. To Plaintiff's surprise, he did not receive any payment.

24.    On or around October 11, at approximately 7:40am, using Plaintiff's phone, Plaintiff's wife sent  the following text to Jensen:

"*Jack there wasn't an issue with Tex's paycheck was there?*"

25.    At approximately 8:20am that same day, Plaintiff's wife again used Plaintiff's phone to send the following texts to his supervisor, Jensen:

"*I'm not seeing a deposit … Is Tex getting paid? Is Tex receiving a paycheck today?*"

26.    Jensen failed to respond to Plaintiff's wife until she texted Jensen again on October 11, 2025 stating: "*I am bringing Tex home today.*" To which Jensen responded: "*Yes. Good.*"

27.    On or around October 14, 2025, upon returning from the hospital and in the stages of recovery, Plaintiff was contacted via phone by Jensen who let him know Plaintiff had to return to work within three days or his wages would be docked. Plaintiff was also told that Defendant would not accommodate light duty work

28.    On October 17, 2024, Plaintiff was forced to return to full duty work with no offer of light

duty offered by Defendant. In fact, Jensen threatened to dock Plaintiff's pay, stating that Defendant did not offer or allow light duty regardless of a physician's orders.

29.    Defendant forced Plaintiff to work with no accommodations despite the fact that his doctor's note clearly called for no heavy lifting for at least a month following Plaintiff's release from the hospital on October 11.

30.    On or around October 24, Plaintiff approached Jensen regarding cuts to his work hours, which prompted Jensen to threaten to dock Plaintiff's hours even more.

31.    Worried about taking care of his wife and young child, in response to the Defendant's threat, Plaintiff proposed that his upcoming vacation time be used so that his check "would not be cut short."

32.    Jensen rejected this proposal, and Plaintiff was not permitted to use vacation time in order to receive paid leave. Accordingly, Plaintiff was only paid for two weeks of work.

33.    On or around October 26, Defendant verbally terminated Plaintiff, stating:

> *"I don't want you here anymore. I don't want to talk about it. You have 5 days to get out of the house (on the property)."*

34.    On or around October 28, Plaintiff received a termination email from Defendant.

35.    Defendants did not engage, and have not engaged, Plaintiff in any meaningful discussion regarding reasonable accommodation for Plaintiff that would have enabled Plaintiff to continue his employment.

36.    Rather than engaging in a meaningful interactive process, Defendant terminated Plaintiff's employment with them.

37.    The Plaintiff never received a negative work performance review from the Defendant.

38.    The Plaintiff received a glowing "letter of gratitude" from the Phelps family – who

regularly visited the ranch – which included a "noticeable improvement" since Plaintiff's addition to the Ranch. In fact, the family wrote:

> *"Your incredible efforts have truly transformed the Jensen Ranch, making it a better place for everyone to enjoy!"*

39. As a result of Plaintiff's medical emergency and the surgeries he underwent, Plaintiff was taking 10 different medications daily – some of which he had to take multiple times a day.

40. Defendant's urgency in evicting Plaintiff upon his termination forced Plaintiff to leave behind his personal vehicle, a 2018 Ford Focus, which remains on the Jensen property behind the main house.

41. Defendant has since made threats to Plaintiff regarding his attempts to reclaim his vehicle.

42. Plaintiff's termination was unjustified as he was disabled and recovering from surgery.

43. Therefore, the Defendant's behavior as demonstrated above towards Plaintiff is a clear indication that Plaintiff was discriminated against because of his disability.

44. Plaintiff has been unlawfully discriminated against on the basis of his actual and/or perceived disabilities.

45. Defendant acted intentionally and intended to harm the Plaintiff.

46. As a result of the acts and conduct complained of herein, the Plaintiff has suffered a loss of employment, income, other compensation which such employment entails, special damages, and great inconvenience.

47. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

48. Defendant unlawfully discriminated against, humiliated, degraded, and belittled the Plaintiff.

49. Plaintiff felt offended, disturbed, and humiliated by the blatantly unlawful, de facto discriminatory termination.

50. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

51. Rather than engaging in a meaningful interactive process, Defendant terminated Plaintiff.

52. Plaintiff has been unlawfully discriminated against on the basis of his actual and/or perceived disabilities and for requesting an accommodation.

53. Plaintiff was disabled within the meaning of the ADA and/or Defendant perceived Plaintiff to be disabled.

54. At all times relevant, Plaintiff's disability was a physical impairment which substantially limits one or more major life activities within the meaning of § 12102(1)(A) of the ADA.

55. The above are just some of the ways Defendant discriminated and retaliated against Plaintiff while employing him.

56. Plaintiff requested accommodations for his disability which is neither unreasonable nor burdensome for Defendant.

57. Defendant's failure to engage in the interactive process, its refusal to accommodate Plaintiff, and its subsequent termination of his employment constitute violations of the ADA as well as the Texas Labor Code. These were acts of discrimination, and retaliation against Plaintiff based on his disability

58. As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional and physical distress, economic loss, and a permanent impact on his ability to maintain gainful employment and pursue a stable career.

59. Defendant was well aware of all of the above discriminatory actions that Plaintiff was being

subjected to throughout his employment at Defendant DEER.

60.     Defendant DEER willingly ignored its obligations to provide accommodation and prevent discrimination in the workplace - to the detriment of Plaintiff.

61.     Defendant DEER's lack of action to help Plaintiff meant that Defendant DEER was acquiescing to the discrimination

62.     Plaintiff was terminated because of his disability, and in retaliation for engaging in protected activities.

63.     Defendant DEER, its employees, agents, representatives, and/or subordinates had no good faith business justification for their individual and collective actions against Plaintiff.

64.     Defendant's actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

65.     Punitive damages are warranted against the Defendant.

**AS A FIRST CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

66.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

67.     As set forth in the paragraphs herein, Defendant discriminated against Plaintiff because of his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

68.     Plaintiff seeks all available remedies under the ADA, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

**AS A SECOND CAUSE OF ACTION**
**FAILURE TO PROVIDE REASONABLE**
**ACCOMMODATIONS IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

69.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

70.     As set forth in the paragraphs herein, Defendant failed to accommodate Plaintiff's requests due to his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

71.     Plaintiff seeks all available remedies under the ADA, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

**AS A THIRD CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

72.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

73.     As set forth in the paragraphs herein, Plaintiff engaged in protected activity by requesting accommodations for his disability to Defendant.

74.     Plaintiff was retaliated against and terminated for his requests for accommodations due to his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

75.     Plaintiff seeks all available remedies under the ADA, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

**AS A FOURTH CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION**
**OF THE TEXAS LABOR CODE**

76.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

77.     As set forth in the paragraphs herein, Defendant discriminated against Plaintiff because of

his disability, in violation of the Texas Labor Code § 21.051.

78.     Plaintiff seeks all available remedies under the Texas Labor Code and relevant Texas laws, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

**AS A FIFTH CAUSE OF ACTION**
**FAILURE TO PROVIDE REASONABLE**
**ACCOMMODATIONS AND FAILURE TO DEMONSTRATE A GOOD FAITH**
**EFFORT IN VIOLATION OF**
**THE TEXAS LABOR CODE**

79.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

80.     As set forth in the paragraphs herein, Defendant failed to accommodate Plaintiff's requests due to his disability, in violation of the Texas Labor Code § 21.128.

81.     Plaintiff seeks all available remedies under the Texas Labor Code and relevant Texas laws, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

**AS A SIXTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION**
**OF THE TEXAS LABOR CODE**

82.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

83.     As set forth in the paragraphs herein, Defendant's retaliatory actions against Plaintiff for requesting reasonable accommodations violate the Texas Labor Code § 21.055.

84.     Plaintiff seeks all available remedies under the Texas Labor Code and relevant Texas laws, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess lost wages, including back pay and front pay, actual,

compensatory, emotional distress damages, liquidated damages and punitive damages, together with pre- and post-judgment interest, costs, attorney's fees, all other damages available under federal and Texas state law, and such other relief as this Court may deem equitable and appropriate.

Respectfully submitted this 19th day of November 2025.

**CONSUMER JUSTICE LAW FIRM**

By: */s/ McKenzie Czabaj*
McKenzie Czabaj, AZ Bar No. 036711
8095 North 85th Way
Scottsdale, Arizona 85258
Phone: (480) 626-2376
Fax: (480) 613-7733
Email: mczabaj@consumerjustice.com
*Attorneys for Plaintiff,*
*Dale Westmoreland*